## William M. Laird *v*. Pittsburg Traction Co., Appellant.

[Marked to be reported.]

166      4
28 SC 1317

*Railroads—Common carriers—Street railways—Tickets—Ejection of passenger—Measure of damages.*

A passenger on a street car desiring to be transferred to another line received a transfer ticket, on the margin of which the nine o'clock A. M. hour was punched. The hour of 7.30 o'clock was also punched. On the back of the transfer ticket was this sentence: "It is the duty of the person receiving it, and one of the conditions upon which this check is accepted that the passenger examine date and time and see that same are correct." Plaintiff made a timely request for the transfer check, but it was not given him until he was in the act of leaving the car. The conductor of the car to which plaintiff was transferred refused to take the ticket, alleging that it was "two hours old." Plaintiff assured him that he had received the check from the conductor of the other car at nine o'clock A. M. immediately before entering the second car, and refused to pay an additional fare. Plaintiff was ejected from the car. *Held*, that plaintiff was entitled to recover.

In such a case damages are not limited merely to an amount sufficient to compensate plaintiff for the trouble and inconvenience caused him by the delay in being put off the car, and the additional expense necessary to complete his journey. He is entitled to substantial damages for the inexcusable trespass.

Argued Nov. 7, 1894. Appeal, No. 259, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1893, No. 623, on verdict for plaintiff. Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass for ejection of passenger.   Before WHITE, J.
The facts appear by the opinion of the Supreme Court.
The ticket which plaintiff received was in form as follows:

PITTSBURGH AND DUQUESNE TRACTION COS.

Good for one fare, on first car leaving point of transfer, after time punched in the margin, on any line punched on this ticket. Good for this day and date only. This is not a stop-over, but good for a continuous ride only. This ticket is not good on car going towards point of transfer. It is the duty of the person receiving it, and one of the conditions upon which this check is accepted, that the passenger examine date and time and see that same are correct.

Defendant's points were among others as follows:
"1st: If plaintiff is entitled to recover at all in this action, he is only entitled to recover damages for the trouble and inconvenience caused him by the delay in being put off the cable car at Craig street, and the additional expense necessary to complete his journey into the city of Pittsburg." Refused. [1]

"3d: Plaintiff cannot recover under the evidence and pleadings in this case, and the verdict must be for the defendants." Refused. [2]

Verdict and judgment for plaintiff for $143.

*Errors assigned* were (1–2) above instructions, quoting them.

*George C. Wilson, Wm. D. Evans* with him, for appellant.—
One of the express conditions of this transfer, upon which
plaintiff sought to ride without the payment of any additional
fare, was that the passenger should examine date and time and
see that the same were correct.

. The ticket presented by the passenger is the only evidence
of his right to travel upon the train, which can be recognized
by the conductor: Ray's Negligence of Imposed Duties, 198,
201; Frederick v. R. R., 37 Mich. 342; Townsend v. R. R.,
56 N. Y. 295; Shelton v. R. R., 29 Ohio, 214; Downs v. R. R.,
36 Conn. 287; McClure v. R. R., 34 Md. 532; Yorton v. R. R.,
6 A. & E. R. R. Cas. 322; Bradshaw v. R. R., 135 Mass. 407;
Dietrich v. R. R., 71 Pa. 432; Ry. v. Rosenzweig, 113 Pa. 519;
Powers v. R. R., 158 Pa. 302.

Plaintiff never did have a proper ticket, and the ticket he
did have he did not even get from the conductor of the com-
pany against which the action is brought, but from the con-
ductor of a company which he has not even seen fit to sue.

The case at bar bears no resemblance to the case of Perry v.
Ry., 153 Pa. 236. In that case the passenger deposited his
fare in the box in obedience to the posted rule of the company,
and had no knowledge of private directions given to the driver
to go through the cars when crowded, and collect fares.

In R. R. v. Bambrey, 2 Mona. 109, s. c., 16 Atl. R. 67,
plaintiff received a proper ticket, and was deceived into giving
it up for an invalid check, and the invalid check was received
from defendant company's agent. In the present case plaintiff
at no time had a proper ticket, and the ticket he did have was
not received from defendant company's conductor, but from
the conductor of a company that is not even made a party to
the action.

The case of R. R. v. Winter, 143 U. S. 60, also differs essen-
tially from this case.

*Willis F. McCook,* for appellee.—This case is fully covered
by R. R. v. Bambrey, 2 Mona. 109, s. c., 16 Atl. R. 67, in the

argument of which before this court counsel for the railroad company presented all the decisions here urged, excepting perhaps R. R. v. Winter, 143 U. S. 60.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 7, 1895:

In view of the undisputed facts and circumstances of this case, the ejection of plaintiff from defendant company's car was an inexcusable trespass.　There was therefore no error in refusing to withdraw the case from the jury and direct a verdict for the defendants; nor was there any error in refusing to charge: "That if plaintiff is entitled to recover at all in this action, he is only entitled to recover damages for the trouble and inconvenience caused him by the delay in being put off the cable car at Craig street, and the additional expense necessary to complete his journey into the city of Pittsburg."　To sanction such a measure of damages, as is suggested in this point, would tend to encourage rather than prevent the commission of indignities to which no well behaved passenger in a public conveyance should be subjected.

Having paid his fare on the electric car, plaintiff, on leaving the same at the corner of Penn and Highland avenues within two or three minutes of nine o'clock on the morning in question, received from the conductor a transfer check so punched that it clearly entitled him to ride thence in defendant company's car to the western terminus of its road in the city of Pittsburg. He thereupon entered a car that was about leaving, and three or four minutes later he handed his transfer check to the conductor, who shortly afterwards returned it, saying he could not receive it—that it was "two hours old;" and then demanded payment of the usual fare.　Plaintiff assured him that he had received the check from conductor of the electric car at nine o'clock A. M. immediately before entering defendant company's car, and refused to pay additional fare.　This demand was repeated and refused several times.　During one of the interviews, the conductor's attention was called to the fact that the nine o'clock A. M. hour was punched, but he obstinately insisted that the 7.30 o'clock A. M. punch must govern, and that plaintiff must leave the car unless he paid his fare.　When Craig street was reached, he called a police officer and directed him to remove the plaintiff from the car.　Not wishing to create

any disturbance, plaintiff, in obedience to the officer's order, withdrew without offering any resistance.

On margin of the check were figures indicating the hours as well as every ten minutes, of both forenoon and afternoon. The seven o'clock A. M. hour had two punches, one of which was partly in the square containing the figures 30—indicating minutes. This punching was manifestly intended for 7.30 o'clock A. M. As already stated, the 9 o'clock A. M. hour was also punched. All these punches were identical in character,— evidently made by the same conductor. For these double punchings, plaintiff was in no way responsible. The check in question was undoubtedly issued to him at the time it was punched for 9 o'clock A. M. If he had carefully read and examined it, there is nothing on it to indicate that he could not use it on the car leaving at 9 o'clock A. M. How or when the other figures 7.30 were punched he, of course, did not know and was not bound to inquire. The right hour for him—9 o'clock A. M. —was correctly and properly punched, and that was sufficient for his purpose.

Why the conductor so obstinately insisted on ignoring the 9 o'clock A. M. punch and recognizing only the 7.30 o'clock A. M. punch, it is impossible to understand. If it was pursuant to instructions from any of his superiors, so much the worse for the defendant company. It is very evident that the exercise of ordinary common sense would have obviated all trouble. Assuming that the double punching created a doubt in the conductor's mind, he had no right, in the circumstances, to resolve that doubt against the plaintiff and eject or cause him to be ejected from the car. There is no doubt as to the genuineness of the 9 o'clock A. M. punch, and that just as clearly entitled plaintiff to remain in the car until he reached his destination. The conductor owed no duty to his employer or to himself that justified him in doing what he did.

Undue importance was attached by the defendants to the so-called contract or condition by which it is sought to make it the duty of passengers to examine date, etc., of the transfer check " and see that the same are correct." If that is intended to be regarded as a reasonable regulation, the check should be given to the passenger, before he leaves the car, a sufficient length of time to afford him at least an opportunity of reading

it and, if wrong, having it corrected. In this case, a timely request for the transfer check was made by plaintiff but it was not given to him until he was in the act of leaving the car. But, as has already been said, if he had read and examined the check ever so carefully he would have found nothing on it to admonish him that it was not good for passage on the 9 o'clock A. M. car. On the contrary, he would have seen that it was correctly punched for that hour and bore the proper date. Why or when the other punches were made was not his affair.

There appears to be no error in the record of which the defendants have any reason to complain.

Judgment affirmed.