# Illg v. Illg, Appellant.

*Divorce—Adultery—Connivance—Fraud by agent.*

Divorces are only granted where allowed by statute, and, where a husband seeks a divorce from his wife on the ground of adultery, the law affords him no relief, where his wife's prostitution has been connived at and encouraged by him.

Where the libellant employed a detective for the purpose of obtaining evidence of his wife's misconduct, to the end that he might obtain a divorce, and the detective then went about the matter in a manner calculated not so much to obtain evidence of the respondent's adultery as to bring it about, the libellant is answerable for his agent's fraud, and cannot be allowed redress from the courts for the act brought about by his own agent.

It was error to grant a divorce in such case, and, upon appeal, the decree will be reversed, and the libel dismissed.

Argued October 5, 1921.   Appeal, No. 78, Oct. T., 1921, by respondent, from decree of C. P. No. 1, Phila. Co., March T., 1915, No. 2297, granting a divorce, in the case of Gustave Illg v. Anna M. Illg.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ.   Reversed.

Libel in divorce.   Before PATTERSON, J.

The opinion of the Superior Court states the case.

The case was referred to J. Howard Reber, Esq., as master, who recommended a decree.

On exceptions to the master's report, the court overruled the exceptions, and granted a divorce.   Respondent appealed.

*Error assigned* was the decree of the court.

*William T. Connor,* and with him *John R. K. Scott,* for libellant.—A libel in divorce, although not technically a bill in equity, may be said to be of the nature of a proceeding in equity, and a man who connives at his

own disgrace by being a party to the adultery of his wife, does not come into court with clean hands, and cannot ask redress from a court of justice: Clawell v. Clawell, 63 Pa. Superior Ct. 88.

*Bertram D. Rearick,* for appellee.

OPINION BY PORTER, J., March 3, 1922:

The libel and bill of particulars filed in connection therewith charged that the respondent had committed adultery with one Gustav Klein, upon four specific dates, once at the residence of her sister, in Philadelphia, twice upon the steamship Rhaetia, and the other at the Wyndham Hotel, Ambler, Pennsylvania. The only testimony as to the offenses alleged to have been committed at the residence of the sister of respondent and upon the steamship Rhaetia was that of Cameron, a detective employed by the libellant, and that of Mrs. Leopold, an employee of said Cameron. The master, in his report, thus states the impression made upon him by those two witnesses: "Your master received such a very bad impression of these two witnesses that he believes a large portion of their story is untruthful and he is unable to determine how much of it is truthful, and therefore, irrespective of their definite testimony, he does not consider the proofs sufficient to sustain the allegation of adultery as having been committed on the steamship Rhaetia," and, upon the same ground he found that the charge of respondent having committed adultery at the residence of her sister was not sustained. The court below, after considering the testimony, was evidently of the same opinion with regard to the testimony of these two witnesses, for it found that the only charge sustained was that the respondent had committed adultery, with Gustav Klein, at the Wyndham Hotel, Ambler, on March 25, 1915, and entered a decree divorcing the parties. The respondent appeals and assigns that decree for error.

We have carefully considered the testimony of the detective Cameron and his assistant, Mrs. Leopold, and are convinced the master and the court below were entirely right in regarding their testimony as entitled to but little weight. It may be conceded that the testimony established that the respondent did commit adultery with Klein, at Ambler, on March 25, 1915, but that fact is not conclusive of the right of the libellant to a divorce. Divorces are only granted where allowed by statute and where a husband seeks a divorce from his wife on the ground of adultery the law allows him no relief where his wife's prostitution has been connived at and encouraged. The Act of March 13, 1815, section 7, 6 Smith's Laws 288, provides that it shall be a good defense and perpetual bar against a suit for divorce on the ground of adultery if the "plaintiff......exposed his wife to lewd company, whereby she became ensnared to the crime aforesaid." The evidence in the present case clearly establishes that the libellant employed the detective Cameron for the purpose of obtaining evidence of his wife's misconduct, to the end that he might obtain a divorce. The evidence convinces us that Cameron went about the matter in a manner calculated not so much to obtain evidence of the respondent's adultery, as to bring it about. He contrived to be introduced to the respondent under an assumed name, that of Charles Lewis, representing himself to be a real estate operator. He introduced his employee, Mrs. Leopold, under the name of Mrs. Hamilton, who informed the respondent that she was a married woman with a husband much older than herself. Cameron took the respondent, her sister, Gustav Klein, Oscar Tuchband and Mrs. Leopold, who was known to the respondent as Mrs. Hamilton, on long automobile rides; on one of these rides they stayed all night at Easton where he informed them that they must register at the hotel and he registered himself and Mrs. Leopold as Mr. and Mrs. Charles Lewis, the respondent and her sister were each registered under the name of

Miss Schmidt; Cameron and Mrs. Leopold being assigned to one room, the respondent and her sister being together assigned to one room, and Klein and his friend being assigned to another room. All the actions of Cameron and Mrs. Leopold, who was known to the others as Mrs. Hamilton, were intended to convey to the respondent the impression that their relations were meretricious. Cameron representing himself to be a rich real estate operator furnished the automobile for these excursions, the libellant reimbursing him for the expenditure. This course of conduct had been going on for some time when the same parties took the automobile tour which terminated at Ambler, where Cameron again first registered himself and Mrs. Leopold under the name of Charles Lewis and wife and to them one room was assigned. The respondent and her sister again registered as unmarried women, each under the name of Miss Schmidt, and they were assigned one room in common. Klein and his friend were assigned to another room. It was there the next morning that respondent and Klein were found under circumstances which certainly warranted the conclusion that they had had illicit intercourse. It matters not that the husband himself may have given no orders for the misconduct of the detective and his woman employee; he cannot obtain redress from the courts for an act of adultery brought about by his own agent. One who takes advantage of his agent's unauthorized fraud is answerable for the fraud; and when a husband intentionally lays a lure for his wife, either acting in person or through an agent, his will necessarily concurs in her act: Clawell v. Clawell, 63 Pa. Superior Ct. 88; Heidrich v. Heidrich, 22 Pa. Superior Ct. 72; Fisher v. Fisher, 74 Pa. Superior Ct. 538; Schwindt v. Schwindt, 66 Pa. Superior Ct. 217; Costello v. Costello, 191 Pa. 380. No good purpose could be subserved by giving in detail the evidence which compels the conclusion that the libellant had, within the meaning of the

Opinion of the Court.   [78 Pa. Superior Ct.

statute, exposed his wife to lewd company, whereby she became ensnared to the crime.

The decree is reversed and the libel is dismissed at cost of the appellee.